No. 2013-1263

In The

# United States Court of Appeals for the Federal Circuit

_____

## CORE LABORATORIES LP,

**Plaintiff-Appellant,**

v.

## SPECTRUM TRACER SERVICES L.L.C., STEVE FAUROT, and KELLY BRYSON,

**Defendants-Appellees.**

_____

**Appeal from the United States District Court for the Western District of Oklahoma in No. 11-CV-1157, Judge Vicki Miles-LaGrange.**

_____

**NON-CONFIDENTIAL BRIEF FOR APPELLEES**

_____

J. CHRISTOPHER DAVIS
PAUL KINGSOLVER
JONATHAN CARTLEDGE
JOHNSON & JONES, P.C.
2200 Bank of America Center
15 West Sixth Street
Tulsa, Oklahoma 74119-5416
Telephone: (918) 584-6644
Fax: (888) 789-0940

JONATHAN S. FRANKLIN
FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Avenue, N.W.
Washington, D.C. 2004-2623
(202) 662-0466

SHEILA KADURA
FULBRIGHT & JAWORSKI L.L.P.
98 San Jacinto Boulevard, Suite 1100
Austin, TX  78701-4255
(512) 474-5201

April 18, 2013

Counsel for Appellees

**Form 9**

FORM 9.   Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Core Laboratories, LP          v.  Spectrum Tracer Services

No. 2013-1263

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

appellees                    certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

Spectrum Tracer Services, L.L.C., Steve Faurot, Kelly Bryson

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

None

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Spectrum Tracer Services, L.L.C has no parent company.  Spectrum Tracer Services, L.L.C. has no publicly held companies that own 10 percent or more of the stock of the party.

4.  ☑   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Fulbright & Jaworski L.L.P., including attorneys Jonathan S. Franklin, Sheila Kadura; and Johnson & Jones, P.C., including attorneys J. Christopher Davis, Paul Kingsolver, and Jonathan D. Cartledge

|                        |                              |
|------------------------|------------------------------|
| 04/17/2013             | /s/ Jonathan S. Franklin     |
| Date                   | Signature of counsel         |
|                        | Jonathan S. Franklin         |
|                        | Printed name of counsel      |

Please Note: All questions must be answered
cc: All Counsel

124

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................... iii

INTRODUCTION ................................................................................. 1

STATEMENT OF RELATED CASES .................................................. 2

JURISDICTIONAL STATEMENT ....................................................... 2

STATEMENT OF THE ISSUES ........................................................... 3

STATEMENT OF FACTS ..................................................................... 4

    A.    Core Sues Spectrum For Trade Secret Misappropriation And Later Adds Patent Infringement Claims ............................ 4

    B.    Core Moves For A Preliminary Injunction On The Newly Added Patent Claims ................................................................. 6

    C.    The District Court Stays The Entire Case Pending Reexamination Of The Asserted Patents .................................. 8

    D.    Core Files An Emergency Motion Including A Second Motion For A Preliminary Injunction ....................................... 9

    E.    The District Court Denies Core's Emergency Motion ........... 11

SUMMARY OF ARGUMENT .............................................................. 13

STANDARDS OF REVIEW ................................................................. 16

ARGUMENT ......................................................................................... 16

    I.    THIS COURT LACKS PENDENT JURISDICTION OVER THE DISTRICT COURT'S DECISIONS DECLINING TO LIFT THE STAY OR SEVER .......................................................... 16

    II.    THE DISTRICT COURT ACTED WITHIN ITS DISCRETION IN DENYING CORE'S MOTION FOR A PRELIMINARY INJUNCTION ....................................................... 19

        A.    Legal Standard ..................................................................... 20

        B.    Core Failed To Demonstrate Irreparable Harm ..................... 22

i

1.      The District Court's Unappealed Findings As To
        Core's First Motion For A Preliminary Injunction
        Support The District Court's Finding Of No
        Irreparable Harm As To Core's Second Motion
        For A Preliminary Injunction ........................................22

2.      Core's Failure To Show Use Of The Alleged Trade
        Secret Supports The District Court's Finding Of
        No Irreparable Harm......................................................27

3.      Core's Delay In Moving For A Preliminary
        Injunction On Its Trade Secret Claim Supports The
        District Court's Finding Of No Irreparable Harm.........34

C.      Core Failed To Demonstrate A Likelihood Of Success
        On The Merits Of Its Trade Secret Claim................................38

D.      The Remaining Preliminary Injunction Factors Do Not
        Evidence An Abuse of Discretion ...........................................40

III.    THE DISTRICT COURT ACTED WITHIN ITS
        DISCRETION IN DENYING CORE'S MOTIONS TO LIFT
        THE STAY PENDING REEXAMINATION AND TO SEVER
        THE NON-PATENT CLAIMS...........................................................41

A.      The District Court Did Not Abuse Its Discretion In
        Declining To Lift The Stay Pending Reexamination As
        To The Non-Patent Claims ......................................................42

B.      The District Court Did Not Abuse Its Discretion In
        Declining To Sever The Non-Patent Claims ...........................47

## STATEMENT OF CONFIDENTIAL MATERIAL OMITTED

Confidential material subject to a protective order has been omitted from this brief. The material omitted on pages 6, 23, and 27 are quoted statements directed to alleged irreparable harm taken from a motion that was filed under seal. The material omitted on page 30 is a quoted statement by a Core employee taken from a transcript that was designated as attorneys' eyes only.

# TABLE OF AUTHORITIES

**Page(s)**

## CASES:

*Altana Pharma AG v. Teva Pharm. USA, Inc.*, 566 F.3d 999 (Fed. Cir. 2009) .................................................................................21, 22, 40, 41

*Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275 (10th Cir. 1999) ..........................16, 48

*Apple, Inc. v. Samsung Electronics Co., Ltd.*, 678 F.3d 1314 (Fed. Cir. 2012)............................................................................34, 38

*Atari Games Corp. v. Nintendo of Am., Inc.*, 897 F.2d 1572 (Fed. Cir. 1990) ..........................................................................................25

*Atlantic Richfield Co. v. Misty Prods., Inc.*, 820 S.W.2d 414 (Tex. App. 1991)........................................................................................39

*Automated Merch. Sys., Inc. v. Crane Co.*, 357 Fed. Appx. 297 (Fed. Cir. 2009)......................................................................................42, 44

*Biogaia AB v. Nature's Way Products, Inc.*, No. 5:10-cv-449-FL, 2011 WL 3664350 (E.D.N.C. Aug. 18, 2011)....................................................44

*Black Fire Fighters Ass'n v. City of Dallas*, 905 F.2d 63 (5th Cir. 1990) ..........................................................................................21

*Chemical Engineering v. Marlo, Inc.*, 754 F.2d 331 (Fed. Cir. 1984) ..........................................................................................28

*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509 (10th Cir. 1991).................................................................................47

*Computer Assocs. Int'l v. Altai Inc.*, 918 S.W.2d 453 (Tex. 1996).......................39

*CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268 (5th Cir. 2009) ..............................38

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 269 F.3d 1149 (10th Cir. 2001) ..........................................................................6, 21

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356
   F.3d 1256 (10th Cir. 2004) ......................................................22, 25

*Falana v. Kent State Univ.*, 669 F.3d 1349 (Fed. Cir. 2012)...................17

*Gasoline Products Co., Inc. v. Champlin Refining Co.*,
   283 U.S. 494 (1931)................................................................45

*Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444,449 (5th Cir.
   2007) ...................................................................................38, 39

*Gonannies, Inc. v. Goupair.Com, Inc.*, 464 F. Supp. 2d 603 (N.D.
   Tex. 2006)..............................................................................35

*In re Google Inc.*, 412 Fed. Appx. 295 (Fed. Cir. 2011) ...................16, 48

*Gould v. Control Laser Corp.*, 705 F.2d 1340 (Fed. Cir. 1983).........16, 42

*Heideman v. S. Salt Lake City*, 348 F.3d 1182 (10th Cir. 2003) .......16, 25

*Heim v. State of Utah*, 8 F.3d 1541 (10th Cir. 1993)..............................33

*qad. Inc. v. ALN Assocs., Inc.*, No. 88 C 2246, 1990 WL 93362
   (N.D. Ill. June 20, 1990) ......................................................46

*Jolley v. Welch*, 904 F.2d 988 (5th Cir. 1990).......................................49

*Kansas Health Care Assoc., Inc. v. Kansas Dept. of Social and
   Rehab. Servs.*, 31 F.3d 1536 (10th Cir. 1994) .............................35, 38

*Landis v. North Am. Co.*, 299 U.S. 248 (1936).....................................42

*Little Earth of the United Tribes, Inc. v. U.S. Dept. of Housing &
   Urban Dev.*, 807 F.2d 1433 (8th Cir. 1986) ...............................23, 24

*McCarter v. Ret. Plan for Dist. Managers*, 540 F.3d 649 (7th Cir.
   2008) .......................................................................................17

*MedSpring Group, Inc. v. Feng*, 368 F. Supp. 2d 1270 (D. Utah
   2005) .......................................................................................40

*Medtronic, Inc. v. Daig Corp.*, 789 F.2d 903 (Fed. Cir. 1986)...............32

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891 (Fed. Cir. 1998) ................................................................20

*Nutrition 21 v. United States*, 930 F.2d 867 (Fed. Cir. 1991) ................................35

*Nystrom v. TREX Co., Inc.*, 339 F.3d 1347 (Fed. Cir. 2003)...................................16

*Orenshteyn v. Citrix Sys., Inc.*, 691 F.3d 1356 (Fed. Cir. 2012) ............................17

*Patlex Corp. v. Mossinghoff*, 758 F.2d 594 (Fed. Cir. 1985) ..................................42

*Pet Milk Co. v. Ritter*, 323 F.2d 586 (10th Cir. 1963) ...........................................42

*Plains Cotton Co-op. Ass'n of Lubbock, Texas v. Goodpasture Computer Serv., Inc.*, 807 F.2d 1256 (5th Cir. 1987).........................................21

*Plant Genetic Sys. v. Dekalb Genetics*, 315 F.3d 1335 (Fed. Cir. 2003) ................................................................32

*Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970 (Fed. Cir. 1996)............................29

*Pre-Paid Legal Services, Inc. v. Cahill*, -- F. Supp. 2d --, No. 12-cv-346-JHP, 2013 WL 551335 (E.D. Okla. Feb. 12, 2013) ...................29, 30, 39

*Privitera v. California Bd. of Med. Quality Assurance*, 926 F.2d 890 (9th Cir. 1991)..............................................................19

*Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842 (Fed. Cir. 2008)..........................................................18, 19

*Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552 (Fed. Cir. 1994) ..............21, 29, 33

*Richtek Tech. Corp. v. UPI Semiconductor Corp.*, No. C 09-05659 WHA, 2011 WL 445509 (N.D. Cal. Feb. 3, 2011) ................................44

*Roper Corp. v. Litton Sys., Inc.*, 757 F.2d 1266 (Fed. Cir. 1985) .........28, 29, 31, 34

*Samish Indian Nation v. United States*, 419 F.3d 1355 (Fed. Cir. 2005) ................................................................38

*Sitrick v. Dreamworks, LLC*, 516 F.3d 993 (Fed. Cir. 2008) ..................................20

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657
     F.3d 1349 (Fed. Cir. 2011) ............................................................16

*Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35 (1995) .........................17

*Tab Exp. Int'l, Inc. v. Aviation Simulation Tech., Inc.*, 215 F.R.D.
     621 (D. Kan. 2003) ......................................................................49

*Titan Holdings, LLC v. Under Armour, Inc.*, No. CIV-11-777-D,
     2012 WL 2885768 (W.D. Okla. July 13, 2012) ...........................42, 43

*Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452
     (Tex. App. 2004)...........................................................................39

*United States v. O'Neil*, 709 F.2d 361 (5th Cir. 1983) ...........................47

*United States v. Power Eng'g Co.*, 191 F.3d 1224 (10th Cir.
     1999) ....................................................................................16, 20

*United States v. Sarracino*, 340 F.3d 1148 (10th Cir. 2003)............16, 48

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ...........21, 22, 28

**STATUTE:**

28 U.S.C § 1292(a)(1)...........................................................................3, 17, 19

**RULES:**

Fed. R. Civ. P. 11(b)(3).........................................................................36

Fed. R. Civ. P. 21 .............................................................................47, 48, 49

Fed. R. Civ. P. 21(a)..........................................................................15

Fed. R. Civ. P. 11 .............................................................................36, 46

**OTHER AUTHORITIES:**

11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
     *Federal Practice and Procedure* § 2948.1 (2d ed. 1995)............................22, 28

Restatement Third of Unfair Competition § 40 ......................................39

# INTRODUCTION

In January 2012, plaintiff-appellant Core Laboratories LP ("Core") moved for a preliminary injunction, arguing that defendants-appellees Spectrum Tracer Services, L.L.C. ("Spectrum"), Steve Faurot, and Kelly Bryson (collectively, "Appellees") were improperly using its patented intellectual property.  That motion was denied because Core presented no evidence it was suffering irreparable harm, and Core did not appeal.  Almost a year later, Core filed a second motion for a preliminary injunction, again asserting that Appellees were improperly using its intellectual property (this time a spreadsheet file that Core said was a trade secret), but once again it provided no evidence as to why it was suffering irreparable harm. The district court accordingly denied the motion as it had before, and also denied Core's motion to lift the stay pending reexamination or sever Core's non-patent claims in order to allow those claims to proceed separately.

The denial of a preliminary injunction is reviewed only for abuse of discretion, and there was no such abuse here given that Core provided no evidence that it was suffering irreparable harm and delayed almost two years before seeking an injunction on its trade secret claims.  As the district court properly held based on the evidence before it, Core's alleged loss of market share was due to its inability to satisfy market demand rather than anything Appellees did with Core's intellectual property.  Moreover, although Core complains that a spreadsheet file

was found on a Spectrum employee's computers, the evidence showed that Spectrum never used the file, further supporting the finding of no irreparable harm and also demonstrating that Core was unlikely to succeed on the merits of its trade secret claim.

This Court has no jurisdiction to review the district court's discretionary decision not to lift its previously ordered stay or sever Core's claims. But even if it did, those decisions were well within the district court's discretion. Core itself chose to file its claims together, and judicial economy would be hindered rather than furthered if Core's patent and non-patent claims proceeded on separate tracks. Core will be able to litigate all of its claims once the stay has expired.

## STATEMENT OF RELATED CASES

No other appeal in or from the same civil action in the trial court was previously before this or any other appellate court. Counsel for Appellees is aware of no other cases that may be directly affected by this Court's decision.

## JURISDICTIONAL STATEMENT

As explained below, this Court lacks jurisdiction to consider the district court's denial of Core's motion to lift the previously ordered stay of litigation pending reexamination and the denial of Core's motion to sever the patent claims. *See infra* at 16-19. There is no pendent appellate jurisdiction to review the decisions pertaining to the stay pending reexamination because those decisions are

2

not inextricably intertwined with, or necessary for meaningful review of, the denial of the preliminary injunction, which is the only order over which this Court possesses interlocutory jurisdiction. *Id.*

Core timely appealed the district court's March 13, 2013 order denying Core's second motion for a preliminary injunction, and the Court has jurisdiction to review that order pursuant to 28 U.S.C § 1292(a)(1). However, Core did not timely appeal any aspect of the district court's prior order denying Core's first motion for a preliminary injunction, which was entered on March 27, 2012. A609-13; Core Opening Br. 15. Thus, the findings and conclusions made by the district court in denying Core's first request for a preliminary injunction are not subject to review by this Court because they were not timely appealed.

## STATEMENT OF THE ISSUES

1.      Whether this Court lacks jurisdiction to review the district court's denial of Core's motion to lift the previously-instituted stay of the litigation and the district court's denial of Core's motion to sever the patent claims, when review of those interlocutory decisions, which are not appealable on their own, is unnecessary to the review of the preliminary injunction denial.

2.      Whether the district court acted within its discretion in denying Core's request for a preliminary injunction when Core failed to establish either irreparable harm or a likelihood of success on the merits.

3.      If jurisdiction to review the issue exists, whether the district court acted within its discretion to control its docket in denying Core's motion to lift the stay that had been in place for one month, based on the district court's findings that the stay would simplify the issues and facilitate trial of this case and that Core had failed to show any undue prejudice caused by the stay.

4.      If jurisdiction to review the issue exists, whether the district court acted within its discretion to control its docket when it denied Core's motion to sever the non-patent claims from the patent claims in light of the district court's finding that the patent and non-patent claims are related enough to warrant keeping all claims in one action.

## STATEMENT OF FACTS

### A.      Core Sues Spectrum For Trade Secret Misappropriation And Later Adds Patent Infringement Claims.

Core filed its Original Complaint against Appellees on March 11, 2011. A44-58.  That Complaint alleged misappropriation of trade secrets that was allegedly causing Core

> to suffer immediate and irreparable harm that cannot be adequately compensated by an award of damages, including, without limitation, that Core will continue to suffer damage to its valuable confidential information, trade secrets, and its reputation and goodwill in the industry because Defendants have interfered with Core's ability to control and exercise Core's domain over certain of its trade secrets and confidential information including, but not limited to, the trade secrets and confidential information contained in the Core Documents.

A52 at ¶ 31; *see also* A51-52 at ¶¶ 28-35; A51 at ¶ 24 ("Without the relief requested in this Original Complaint, Core will continue to be irreparably harmed . . . ."). Core's Original Complaint also alleged that a preliminary injunction against Defendants would be appropriate to prevent their "continued use or publication of Core's Trade Secrets." A57 at ¶ 65. However, Core did not move for a preliminary injunction on its trade secret claims until almost two years later, on February 15, 2013. A1015-40.

In November 2011, Core amended its complaint to assert patent infringement claims. *See* A156; A171-72. Core repeated its previous allegations that Spectrum had misappropriated Core's trade secrets, which was allegedly causing Core "irreparable harm" and warranted preliminary injunctive relief. *See* A164 at ¶ 30; A165-66 at ¶ 41; A172-73 at ¶ 88. However, Core did not file a motion seeking a preliminary injunction on its trade secret claims. Instead, Core moved for a preliminary injunction only on its patent infringement claims. *See* A233-34; Core Opening Br. 5. Core did not amend its complaint after filing this Third Amended Complaint. For example, Core did not amend its trade secret misappropriation claims in light of its allegations directed to the "Software Application" that formed the basis for Core's second request for a preliminary injunction. Accordingly, those allegations are not new claims in this case, but

CONFIDENTIAL MATERIAL REDACTED

rather are part of the trade secret claims originally filed by Core on March 11, 2011.

### B.    Core Moves For A Preliminary Injunction On The Newly Added Patent Claims.

In January 2012, Core moved for a preliminary injunction, limiting its motion to the newly added claims for patent infringement.  A233-34.  Core argued that it was being ████████████████████████████████████████████████████████ ████████████████████████████████████████████████  A234.  As an example, Core asserted that Spectrum had caused it to ████████████████ ████████████████████████████  A250.  Core also asserted that Spectrum had caused price erosion based on Core ██████████████████████████████████████ ██████████████████  A250; *see also* A273-74 at ¶ 8.  Core asserted that ███ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████  A273-74 at ¶ 8.

The district court denied Core's motion.  In its decision, the court explained that Core could not be awarded a preliminary injunction unless it demonstrated: "(1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest."  A611 (citing *Dominion*

6

*Video Satellite, Inc. v. Echostar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir.

2001)).  After full briefing and an evidentiary hearing that included live testimony,

the district found on March 27, 2012, that Core had not met its burden of showing

irreparable harm if the injunction were denied.

In particular, the court noted the absence of any evidence that any specific

Core customer relationship had been damaged by the alleged actions of Spectrum.

A612.  The court described testimony from a high level Core employee (Tom

Hampton) stating that Core was unable to provide service to prospective customers

because of a major increase in demand for tracing services, rather than because of

any alleged activities of Spectrum.  *Id.*  The court found that "there was no

evidence presented as to any specific customer relationship that was altered by the

alleged actions of defendants," and that "Core was in fact unable to provide service

to prospective customers because of [an] increase in business."  *Id.*  The court

further found that "Core has not shown that any injury to its good will or name is

certain or great," and concluded that Core's "conclusory statement of harm is

simply not enough to satisfy Core's burden to show that its right to relief is clear

and unequivocal."  *Id.*  That finding was in agreement with Spectrum's evidence

that its sales are not at the expense of Core, but rather represent new markets, new

customers, or customers who had approached Core for tracing services but were

told that Core could not perform the work.  *See* A304; A566 at ¶ 33.  Core did not timely appeal any aspect of that March 27, 2012 Order.

### C.  The District Court Stays The Entire Case Pending Reexamination Of The Asserted Patents.

On November 28, 2012, Appellees moved to stay the case pending an *inter partes* reexamination initiated by Spectrum in which the U.S. Patent and Trademark Office ("PTO") had rejected every challenged claim in the asserted patents.  A789-92.  In the context of that motion, Appellees asserted that a stay was appropriate as to all claims (not just the patent claims) because the reexamination would streamline discovery and the litigation.  A801-02.  In response, Core urged that even if the patent claims were stayed, the non-patent claims should proceed.  A945.  Core also argued that it would be unduly prejudiced by a stay because of, for example, alleged price erosion and loss of market share.  A946-47.  In their reply, Appellees countered Core's assertion of irreparable harm, noting that Core had not offered any evidence of actual loss of market share or injury to goodwill, either in opposing the motion for a stay or in supporting its previous motion for a preliminary injunction.  A998.  Core did not dispute those arguments in its sur-reply.  *See* A1004-08.

In an order entered on February 8, 2013, the district court ultimately agreed with Appellees and granted the stay (A1009-13), finding that Core had not shown "how it would in fact be unduly prejudiced by the granting of a stay" and that "to

wait for the PTO to resolve the issue of validity of the relevant patents will simplify the issues in question and facilitate the trial of this case." A1013. The court did not exclude the non-patent claims from the stay, but rather stayed the entire case. *Id*.

### D.    Core Files An Emergency Motion Including A Second Motion For A Preliminary Injunction.

One week after the district court stayed the case, Core filed an Emergency Motion that included a second motion for a preliminary injunction. *See* A8-10. The preliminary injunction motion was specific to Core's trade secret claim and was said to be based on newly discovered evidence. *Id.* Core's Emergency Motion also asked the district court to reconsider its previous decision to stay all claims, including Core's non-patent claims. *See* A10.

The basis for Core's Emergency Motion was a so-called Spectrum "whistleblower" who had contacted Core allegedly claiming that Spectrum was using a spreadsheet file—which Core refers to as the "Software Application"— containing Core's "confidential and trade secret information." A1018. Based primarily on a telephone call that high-level Core employees made to the alleged whistleblower and secretly recorded, Core alleged it would suffer irreparable harm if the district court did not enjoin Appellees. A1018-19.

In opposing Core's Emergency Motion, Spectrum provided sworn testimony from the alleged "whistleblower," who was actually Spectrum computer

programmer Michael Swanson.  In his declaration, Mr. Swanson explained his

contact with Core, along with other facts that showed the relief sought by Core was

unwarranted.  *See* A1105-07.

For example, Mr. Swanson explained that the Core "Software Application"

he discovered was present only on a portable hard drive and his personal

computers—not on any other Spectrum computer.  A1106 at ¶ 14.  He further

explained that he is intimately familiar with all text, code, formulas, scripts, and

data used by Spectrum in the company's business, and that he had not used any

such material derived from Core or Pro Technics (a Core-owned company) in his

duties as the person responsible for developing Spectrum's Customer Relationship

Manager software program or any other computer-related functions or programs.

A1105 at ¶¶ 4-5.  Mr. Swanson also declared that he had examined all of

Spectrum's computer equipment and found no Core proprietary information.

A1106 at ¶¶ 11-14.  All he found were a few Word documents and Excel

spreadsheets that may have originally been created on a Core registered computer

(based on the presence of the term "Core Laboratories" or "Pro Technics" in a

document's properties) but did not currently contain any Core information.  *Id.* at

¶ 12.  Instead, those files contained solely Spectrum content.  *Id.*

As in its first preliminary injunction motion, Core asserted that it was being

irreparably harmed by Spectrum's alleged actions.  For example, Core again

asserted price erosion that was "caused by" Spectrum based on Core "ha[ving] to reduce its prices" and citing to the same type of evidence it had used to support its assertion of price erosion in its first preliminary injunction motion that was limited to the patent infringement claims. *Compare* A1057 at ¶¶ 12-14, A1061-78 *to* A273-74 at ¶ 8, A277-79.

In light of the evidence presented, Appellees argued that Core had not met its burden to show that a preliminary injunction was warranted because none of the four factors weighed in favor of granting such relief. A1093-97. Appellees also noted that Core's Emergency Motion was not based on any new claim. *See* A1084. Instead, the trade secret misappropriation claim underlying the requested injunction was the same trade secret claim that had been pending since Core filed its Original Complaint nearly two years earlier. *See id.* Thus, Spectrum argued that Core's motion was untimely because even if Core's newly alleged facts were presumed to be true, they would at best be evidence directed to the method by which Spectrum was allegedly misappropriating Core trade secrets, a claim that had been asserted in Core's Original Complaint. *See* A1084-85.

### E.    The District Court Denies Core's Emergency Motion.

The district court denied Core's Emergency Motion in its entirety. Regarding severance of the non-patent claims, the court stated that it had "previously addressed Core's request to sever certain claims" in the context of the

court's order staying the case.  A10.  The district court noted the applicability of its previous finding to Core's new motion, explaining that it had already determined "that the resolution of the validity issue as to the relevant patents would simplify the issues in this case and facilitate any trial that subsequently occurred."  *Id.* Regarding the request to lift the stay, the district court explained that it had previously found that "Core had failed to establish how in fact it would be unduly prejudiced by the granting of the stay."  *Id.*

The district court also noted that it had previously considered certain issues relevant to Core's requested preliminary injunction.  Namely, in the context of the first preliminary injunction motion, the court determined that Core had not shown the requisite irreparable harm.  A8-9 ("After a hearing on Core's first motion for preliminary injunction, the Court denied said motion because Core failed to meet its burden of showing irreparable harm if the injunction were denied.").

The district court specifically considered Core's "new evidence" in deciding whether Core had met its high burden to show that a preliminary injunction should issue.  *See* A9; A11-12.  For example, the court's opinion discussed Core's allegations directed to the so-called "whistleblower" and Core's assertions in light of that evidence.  A9.  After considering the new evidence, the court found that "the only new or different evidence presented in support of Core's second motion for preliminary injunction is the alleged method by which defendants are allegedly

misappropriating its patents, trade secrets and copyrighted material." A11-12. The court concluded:

> Based upon the evidence presented, the Court finds Core has not met its burden of showing irreparable injury if the instant preliminary injunction is denied. Specifically, the Court finds that any harm Core has suffered or may suffer as a result of defendants' unlawful use of the proprietary and confidential information can be adequately remedied through an award of monetary damages.

A11-12.

## SUMMARY OF ARGUMENT

The only decision that this Court has jurisdiction to review is the district court's denial of Core's second motion for a preliminary injunction. Contrary to Core's contentions, the Court does not have pendent appellate jurisdiction to consider the district court's otherwise unappealable decisions not to lift the stay pending reexamination or to sever Core's non-patent claims. Those decisions are neither inextricably intertwined with nor necessary to a meaningful review of the denial of the preliminary injunction. The district court did not construe its stay as precluding Core from seeking a preliminary injunction, and this Court can therefore review the denial of that injunction on its own terms without considering the district court's decisions with regard to the stay or severance.

The district court did not abuse its discretion in denying the injunction. As the court had previously held, in an order that Core did not appeal, Core failed to present any evidence showing that it was harmed by anything Appellees had done

with its intellectual property.  Rather, any loss of market share was due to Core's own inability to satisfy demand.  As the district court correctly concluded, Core presented no new evidence of harm in its second motion.  Although it alleged that one of its spreadsheet files was on a Spectrum employee's computers, it provided no evidence as to how this fact caused it any harm.  To the contrary, the evidence showed that Spectrum was not using that file, further supporting the finding of no irreparable harm and also demonstrating that Core was not likely to succeed on the merits of its trade secret claim, which under Core's own cited authority requires Core to show that Spectrum made actual commercial use of a trade secret.  The lack of irreparable harm is further shown by the fact that Core delayed nearly two years before seeking an injunction on its trade secret claim.  Core had alleged in its Original Complaint, filed in 2011, that Spectrum was improperly using its trade secrets.  Yet it did not seek an injunction until 2013, thereby showing that Core itself understood it was suffering no irreparable harm from Appellees' alleged misuse of its trade secrets.

To the extent the Court has jurisdiction to review them, the district court's decisions not to lift the stay or to sever Core's non-patent claims should be affirmed.  There was no abuse of discretion on either count.  Core does not and cannot challenge the district court's decision to stay the patent claims pending reexamination.  The district court reasonably held that judicial economy would be

furthered if the stay applied to the whole case so that the parties would litigate all claims at the same time rather than having two sequential trials. Both of Core's motions for preliminary injunction were denied because it could not show irreparable harm, and Core has no right to a lifting of the stay so it can use the coercive discovery processes of the federal courts to "investigate" (Core Opening Br. 53) a claim it should have investigated before filing suit. Like all other parties whose claims are stayed pending reexamination, Core will be able to litigate its entire case, including at trial if warranted, following the expiration of the stay.

The district court similarly acted well within its discretion in declining to sever Core's non-patent claims. The district court properly considered this issue when it decided to stay all claims brought by Core in this case, and Core cannot circumvent that unappealable stay order by arguing that claims it elected to file together should now be severed into different cases under Fed. R. Civ. P. 21(a). But regardless, severing Core's non-patent claims would frustrate rather than promote judicial economy. Core *itself* chose to amend its Original Complaint to add the patent claims—rather than filing those claims as a separate, stand-alone case—because all of the claims involve the same parties and arise from a common nucleus of operative fact. The district court properly held Core to that decision rather than ordering that related claims involving the same parties be litigated in two separate cases proceeding along separate tracks.

15

## STANDARDS OF REVIEW

The district court's decision to deny a preliminary injunction is reviewed for abuse of discretion, with underlying factual findings reviewed only for clear error. *See Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003); *United States v. Power Eng'g Co.*, 191 F.3d 1224, 1230 (10th Cir. 1999).

To the extent the Court has pendent jurisdiction to review the court's denial of Core's motions to lift the stay pending reexamination and sever its non-patent claims, those determinations are reviewed for abuse of discretion. *See United States v. Sarracino*, 340 F.3d 1148, 1165 (10th Cir. 2003); *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1285 (10th Cir. 1999); *see also Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983); *In re Google Inc.*, 412 Fed. Appx. 295, 296 (Fed. Cir. 2011) (A1120-21).

## ARGUMENT

### I. THIS COURT LACKS PENDENT JURISDICTION OVER THE DISTRICT COURT'S ORDERS DECLINING TO LIFT THE STAY OR SEVER.

This Court lacks jurisdiction to review the district court's denial of Core's motion to lift the stay of litigation pending reexamination and the district court's denial of Core's motion to sever the patent claims. Such interlocutory decisions are not ordinarily appealable on their own, *see, e.g.*, *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1359-60 (Fed. Cir. 2011); *Nystrom v.*

*TREX Co., Inc.*, 339 F.3d 1347, 1349-50 (Fed. Cir. 2003), and this Court's pendent jurisdiction does not extend to these interlocutory decisions.

Pendent appellate jurisdiction should be exercised only "in rare circumstances." *Orenshteyn v. Citrix Sys., Inc.*, 691 F.3d 1356, 1358 (Fed. Cir. 2012) (citing *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 50-51 (1995)).  As this Court has explained, the Supreme Court in *Swint* "'threw cold water on pendent appellate jurisdiction' . . . mak[ing] clear that only the most extraordinary circumstances could justify" its use. *Falana v. Kent State Univ.*, 669 F.3d 1349, 1360-61 (Fed. Cir. 2012) (citing *Swint*, 514 U.S. at 51) (quoting *McCarter v. Ret. Plan for Dist. Managers*, 540 F.3d 649, 653 (7th Cir. 2008)).  Pendent jurisdiction does not exist "when the non-appealable decision is neither 'inextricably intertwined with' nor 'necessary to ensure meaningful review of' the appealable decision." *Orenshteyn*, 691 F.3d at 1358-59 (quoting *Swint*, 514 U.S. at 50-51); *see also Falana*, 669 F.3d at 1361.

That exacting standard is not met here.  The only decision over which this Court possesses interlocutory jurisdiction is the denial of Core's motion for a preliminary injunction. *See* 28 U.S.C. § 1292(a)(1).  The issues pertaining to the stay pending reexamination are neither inextricably intertwined with, nor necessary to ensure meaningful review of, the preliminary injunction denial.  The district court fully considered Core's request for a preliminary injunction, and did so

17

without disturbing its prior rulings staying all claims and denying severance of the non-patent claims. *See* A7-12. Thus, the court did not construe its stay order as precluding Core's request for a preliminary injunction pending final resolution of the case. Similarly, this Court can meaningfully review the district court's denial of Core's second motion for a preliminary injunction without the need to review the district court's denials of Core's requests to lift the stay and sever the non-patent claims. Whether a preliminary injunction should or should not have been granted has no bearing on whether litigation on the merits of the case should have been stayed pending reexamination. If the preliminary injunction had been granted, it would have remained in place along with the stay, and its denial has no relation to whether the stay was properly granted. The appealable decision denying Core's preliminary injunction is thus not "inextricably intertwined" with the interlocutory, unappealable decisions to continue the previously-ordered stay and to keep the patent claims with the non-patent claims.

This Court's decision in *Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842 (Fed. Cir. 2008), is not to the contrary. In *Procter & Gamble*, the Court held that the district court abused its discretion by granting a stay and then subsequently denying a motion for preliminary injunction as moot in light of the stay "without considering and balancing the required" preliminary injunction factors. *Id.* at 847. As the Court recognized, redressing the district court's failure

to conduct the required analysis "necessarily implicate[d] the district court's issuance of the stay." *Id*. at 846. The stay was thus itself appealable under Section 1292(a)(1) because it had the practical effect of denying the injunction. *Id.*

The holding in *Procter & Gamble* was based on "unique circumstances" not present in this case. *Id*. at 847 (quoting *Privitera v. California Bd. of Med. Quality Assurance*, 926 F.2d 890, 892-93 (9th Cir. 1991)). Here, the district court fully considered Core's motion for a preliminary injunction after the parties briefed their positions, and only then did the district court deny the motion. *See generally* A7-12. It did not construe the stay order as precluding issuance of a preliminary injunction if Core had satisfied the requirements for one. Thus, unlike the court in *Procter & Gamble*, the district court in this case did not use the previously ordered stay as a reason to avoid assessing the merits of the preliminary injunction motion. Consequently, the only issue properly before the Court in this appeal is whether the district court abused its discretion in denying Core's second motion for a preliminary injunction.

## II.    THE DISTRICT COURT ACTED WITHIN ITS DISCRETION IN DENYING CORE'S MOTION FOR A PRELIMINARY INJUNCTION.

Core did not meet its burden to show that a preliminary injunction is warranted because it failed to demonstrate irreparable harm or a likelihood of success on the merits of its trade secret claim. Either of those failures alone

justifies the district court's denial of Core's motion.  In addition, Core's trade secret misappropriation claim had been pending for almost two years before Core moved for a preliminary injunction, which further supports the finding of no irreparable harm.  Accordingly, the district court acted within its discretion in denying Core's motion for a preliminary injunction.

### A.    Legal Standard.

Whether a preliminary injunction should be granted is a matter of regional circuit law.  *See*, *e.g.*, *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 894 (Fed. Cir. 1998).[1]  The decision whether to grant a preliminary injunction rests within the sound discretion of the trial court, and will not be overturned on appeal absent an abuse of discretion.  *See Power Eng'g Co.*, 191 F.3d at 1230.  The district court's factual findings will be upheld unless clearly erroneous.  *See id.* Thus, when a preliminary injunction has been denied, the movant cannot obtain reversal unless it shows "not only that one or more of the findings relied on by the district court was clearly erroneous, but also that denial of the injunction amounts

---

[1]    Although Core asserts that Fifth Circuit law applies to the question whether Core was entitled to a preliminary injunction on its trade secret claim, Core Opening Br. 33, 37-38, Tenth Circuit law applies instead because this case was transferred to the Western District of Oklahoma.  *See Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1002 (Fed. Cir. 2008) (in a transferred case, applying procedural law of the transferee regional circuit).  However, because the substantive law governing the propriety of granting a preliminary injunction does not differ materially in the Fifth or Tenth Circuits, the Court need not resolve that issue.

to an abuse of the court's discretion upon reversal of erroneous findings." *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1555 (Fed. Cir. 1994).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). A movant seeking a preliminary injunction must show: (1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest. *Dominion Video Satellite, Inc.*, 269 F.3d at 1154; *Plains Cotton Co-op. Ass'n of Lubbock, Texas v. Goodpasture Computer Serv., Inc.*, 807 F.2d 1256, 1259 (5th Cir. 1987). "Although the factors are not applied mechanically, a movant must establish the existence of both of the first two factors to be entitled to a preliminary injunction." *Altana Pharma AG v. Teva Pharm. USA, Inc.*, 566 F.3d 999, 1005 (Fed. Cir. 2009) (citation omitted); *see also Black Fire Fighters Ass'n v. City of Dallas*, 905 F.2d 63, 65 (5th Cir. 1990) ("The denial of a preliminary injunction will be upheld where the movant has failed sufficiently to establish any one of the four criteria.") (citation omitted).

### B.     Core Failed To Demonstrate Irreparable Harm.

To be awarded a preliminary injunction, Core was required to show that it would suffer irreparable harm absent such extraordinary relief.  As the district court noted, this showing is "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction." A611 (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2948.1 (2d ed. 1995)); *see also Altana Pharma AG*, 566 F.3d at 1005 (movant must show irreparable harm to be awarded a preliminary injunction); *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) ("showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction").  It is improper to award a preliminary injunction "based only on a possibility of irreparable harm" because such an award "is inconsistent with [the U.S. Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22 (citation omitted).  Core failed to make the required showing of irreparable harm.

### 1.     The District Court's Unappealed Findings As To Core's First Motion For A Preliminary Injunction Support The District Court's Finding Of No Irreparable Harm As To Core's Second Motion For A Preliminary Injunction.

Core's allegations of irreparable harm in its second motion for a preliminary injunction suffer from the same deficiencies that were noted by the district court in

CONFIDENTIAL MATERIAL REDACTED

its decision denying Core's first motion for a preliminary injunction.  For example,

in its first preliminary injunction motion, Core argued that it would suffer

irreparable harm based on the following allegations:  ████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

After considering the parties' briefs and affidavits, and after conducting an

evidentiary hearing, the district court concluded that Core's allegations of

irreparable harm were unfounded.  A8-9; A609-13.  In doing so, the district court

pointed out various deficiencies in Core's showing.  *See, e.g.*, A612.  Core did not

appeal the district court's decision, rendering those findings law of the case not

open to reconsideration in this appeal.  *See Little Earth of the United Tribes, Inc. v.*

*U.S. Dept. of Housing & Urban Dev.*, 807 F.2d 1433, 1437-44 (8th Cir. 1986)

(unappealed orders become law of the case binding on future proceedings).

The district court did not abuse its discretion in denying Core's second

motion where Core did not remedy any of the deficiencies of its first motion.  The

"new evidence" raised by Core in its second motion was the "whistleblower"

evidence that an Excel spreadsheet file created by Core was found on a single

Spectrum employee's computers.  But just as with its first motion, Core failed to

show that it had been or would be harmed in any way by that fact, much less that it had been or would be irreparably harmed beyond anything that damages could compensate.

In denying Core's first request for a preliminary injunction, the district court noted the absence of any evidence that any specific customer relationship had been affected by the alleged actions of defendants.  A612.  In fact, as the district court explained, a high level Core employee (Tom Hampton) had testified that Core was unable to provide services to prospective customers because of a major increase in demand for tracing services—*not* because of any alleged activities of defendants.  *See id.*  That testimony from Core's employee was in agreement with Spectrum's evidence that its sales are not at the expense of Core, but rather represent new markets, new customers, or customers who had approached Core for tracing services but were told that Core could not perform the job or was "sold out."  *See* A304; A566 at ¶ 33.

Core's allegations of price erosion allegedly caused by Spectrum also failed to demonstrate irreparable harm.  Core's second motion for a preliminary injunction relied on the same reduced pricing assertion and the same type of evidence that the district court found insufficient to show irreparable harm in the context of Core's first motion for a preliminary injunction.  *Compare* A1057 at ¶¶ 12-14, A1061-78 *to* A273-74 at ¶ 8, A277-79.  Moreover, although Core's second

24

preliminary injunction was premised on the "Software Application," Core failed to show how any reduced prices were caused by Spectrum's purported use of the allegedly misappropriated spreadsheet file. Indeed, Core asserted in its first preliminary injunction motion that its price reductions were due to alleged patent infringement, *see* A273-74 at ¶ 8—not the use of any unpatented trade secrets—an allegation the district court properly rejected as conclusory. Particularly given that Core did not show any effect of Spectrum's alleged use of the "Software Application" on Core's pricing, the district court was well within its discretion to find that Core's assertions of price erosion did not justify a preliminary injunction that was premised on that material.

The district court ultimately found that Core's statements directed to irreparable harm were "conclusory" and correctly explained that such statements are insufficient to justify a preliminary injunction. *See* A612; *Dominion Video Satellite, Inc.*, 356 F.3d at 1261 (statement that is "wholly conclusory" does not justify the issuance of a preliminary injunction); *Atari Games Corp. v. Nintendo of Am., Inc.*, 897 F.2d 1572, 1575 (Fed. Cir. 1990) ("[A] district court should be wary of issuing an injunction based solely upon allegations and conclusory affidavits submitted by plaintiff.") (citations omitted). The district court also found that Core had not "shown that any injury to its good will or name is certain or great," which also supported the district court's denial of Core's motion. A612; *Heideman*, 348

F.3d at 1189 ("To constitute irreparable harm, an injury must be certain, great, actual and not theoretical.") (citation and internal quotation marks omitted). Core did not appeal those findings.

In Core's Emergency Motion that included its second motion for a preliminary injunction, Core attempted to justify such relief based on the same allegations it had made in its first motion for a preliminary injunction: reduced market share, price erosion, and loss of customer goodwill and business opportunities. A1036. However, as with its first motion for a preliminary injunction, Core again failed to provide any evidence of actual injury that had been caused by Appellees. For example, Core did not point to any evidence of any specific customer relationship that had been damaged due to Appellees, even though the district court had specifically pointed to this deficiency in its decision denying Core's first motion for a preliminary injunction. *See* A612. Although the first motion related to alleged patent infringement and the second to alleged misappropriation of a trade secret, this deficiency related equally to both motions. Based on the evidence before it, the district court justifiably found that Core's lost market share and business opportunities were the result of its own inability to satisfy demand rather than anything that Spectrum had done. That finding applies just as forcefully to Core's claim about its spreadsheet file as it did to Core's claim that defendants were infringing its patents.

CONFIDENTIAL MATERIAL REDACTED

The district court thus was within its discretion to find, as it had previously done, that Core's own prior testimony combined with Spectrum's evidence revealed that any alleged injury to Core was not due to Appellees' activities, but was instead caused by Core's inability to provide services to customers. *See* A304; A566 at ¶ 33; A612; A1096. Moreover, even though the district court explained in denying Core's first motion for a preliminary injunction that Core's "conclusory" statements of irreparable harm were insufficient and that Core had failed to demonstrate "any injury to its good will or name [that] is certain or great," A612, Core again provided only conclusory statements that Spectrum is allegedly causing ████████████████████████████████████ A1036; A1057. Thus, the district court did not commit clear error in finding that Core had failed, for the second time, to show irreparable harm, and that any injury to Core could be adequately remedied by monetary damages. *See* A11-12.

### 2.    Core's Failure To Show Use Of The Alleged Trade Secret Supports The District Court's Finding Of No Irreparable Harm.

The district court's finding of no irreparable harm is also supported by the lack of any evidence that Spectrum was using the "Software Application" that formed the basis of Core's motion. This fact further demonstrates that the finding was not clearly erroneous, and the denial of Core's motion for a preliminary injunction can be affirmed for that reason alone.

In *Roper Corp. v. Litton Sys., Inc.*, 757 F.2d 1266, 1272-73 (Fed. Cir. 1985), this Court affirmed the denial of a preliminary injunction in a patent case where there was no evidence that allegedly infringing technology was currently being used or would be used. As the court explained, there was no irreparable harm because the alleged infringer "does not presently make, and has no immediate plans to make" the accused product, and because the plaintiff's evidence that it was harmed by anything the defendant did was "conjectural and insufficiently supported to be persuasive." *Id*. at 1273. "At best," the court held, the plaintiff "has demonstrated mere apprehension of potential future infringement" but "[w]ithout more, such fears cannot justify the issuance of preliminary equitable relief" because "'[n]o authority anywhere supports the notion that a preliminary injunction may issue in response to rumors of a threat of infringement.'" *Id*. (quoting *Chemical Engineering v. Marlo, Inc.*, 754 F.2d 331, 334 (Fed. Cir. 1984)); *see also Winter*, 555 U.S. at 12 ("a preliminary injunction will not be issued simply to prevent the possibility of some remote future injury") (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2948.1 (2d ed. 1995)). Thus, in *Roper*, "the status quo was maintained without injunctive relief pendente lite." *Id*. at 1273.

So too here. Although this appeal involves an alleged trade secret rather than a patent, the principles are the same. There is no irreparable harm warranting

the drastic remedy of a preliminary injunction where, as here, there is no credible

evidence that the defendant has used or would use the allegedly misappropriated

intellectual property to the detriment of the plaintiff, and the plaintiff presented

only conjectural and insufficiently supported evidence that it has been harmed.

*See Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 974 (Fed. Cir. 1996) (no

irreparable harm when "the non-movant has or will soon cease the allegedly

infringing activities") (citing *Reebok Int'l Ltd.*, 32 F.3d at 1557-59 and *Roper*, 757

F.2d at 1273); *Pre-Paid Legal Services, Inc. v. Cahill*, -- F. Supp. 2d --, No. 12-cv-

346-JHP, 2013 WL 551335, at *7 (E.D. Okla. Feb. 12, 2013) (no irreparable harm

based on finding that defendant was not using the alleged trade secret).

The only alleged trade secret that Core pointed to in its motion was an Excel

spreadsheet file, which Core labels the "Software Application." But the record

reveals that Spectrum never used that spreadsheet file, much less used it in a way

that would irreparably harm Core. Michael Swanson, the Spectrum employee that

discovered the spreadsheet file on a portable hard drive (whom Core refers to as

the "whistleblower") provided sworn testimony that he never "used any text, code,

formulas, scripts or data obtained from or derived from Core Laboratories or

ProTechnics." A1105 at ¶ 5. The first time Mr. Swanson became aware of any

Core or Pro Technics files in the possession of Spectrum was when he was asked

by another Spectrum employee to review certain spreadsheets to incorporate field

CONFIDENTIAL MATERIAL REDACTED

work functions in certain software he was developing. A1105-06 at ¶ 5. It was then that Mr. Swanson first saw the Core spreadsheet file that formed the basis of Core's Emergency Motion. But instead of using any information in that file, Mr. Swanson contacted Core. *See id.* at ¶¶ 2, 5-6, 14. Even Core's secretly recorded conversation with Mr. Swanson supports those sworn statements. ██████

██████████████████████████████████████████████████

████████████████████████████████ Mr. Swanson responded, "I haven't been doing that." A1046; *see also* A1947 (Mr. Swanson stating: "Yeah, I'm doing nothing with it; and I've continued to do nothing with it.").

Mr. Swanson further stated that Spectrum management had never asked him to copy or reproduce any text, code, formulas, scripts, or data obtained from or derived from Core Laboratories or ProTechnics. A1106 at ¶ 7. As Core itself notes, Mr. Swanson is "currently employed as Spectrum's only computer programmer." Core Opening Br. 5. Thus, Mr. Swanson was in the best position to know whether Spectrum was "actively taking steps to copy and implement the Software Application in their own business," as Core alleges (*id.* at 4). As authorized by Spectrum, Mr. Swanson searched all hard drives on all Spectrum computers to identify any documents that may have been created by Core and preserved them for purposes of the pending litigation between Core and Spectrum.

*See* A1106 at ¶¶ 10-13.  As of the date of Mr. Swanson's declaration, he had found some Word documents and Excel spreadsheets that contained the term "Core Laboratories" or "Pro Technics," but those files did not appear to contain any text, code, formulas, scripts, or data obtained from or derived from Core Laboratories or Pro Technics.  *Id.* at ¶¶ 11-12.  Instead, they contained only Spectrum content.  *Id.* at ¶ 12.  Mr. Swanson further testified that Spectrum management and employees cooperated with his investigation and that no one at Spectrum interfered with it. *Id.* at ¶ 16.

Thus, just as in *Roper*, the record contains ample evidence to conclude that Spectrum has not used and is not using the "Software Application" for which Core sought a preliminary injunction.  And, as the district court properly found when denying both requests for an injunction, Core presented nothing other than speculation to support its contention that it was being harmed by anything Appellees have done.   Core is incorrect in asserting that the district court erred by "disregard[ing] the new evidence Core obtained from the whistleblower, or at a minimum, fail[ing] to fully and properly consider it."  Core Opening Br. 37; *see also id.* at 30.  First, the district court did not disregard Core's evidence.  The district court's opinion discussed that evidence and Core's assertions based on the evidence.  *See* A9.  But regardless, the district court was not required to recite all evidence that it considered in its opinion denying Core's Emergency Motion.

31

*Plant Genetic Sys. v. Dekalb Genetics*, 315 F.3d 1335, 1343 (Fed. Cir. 2003) ("The fact that the district court did not in its opinion recite every piece of evidence does not mean that the evidence was not considered.") (citation omitted).  To the contrary, this Court presumes that all evidence of record was considered, unless explicitly indicated otherwise.  *Medtronic, Inc. v. Daig Corp.*, 789 F.2d 903, 906 (Fed. Cir. 1986) ("We presume that a fact finder reviews all the evidence presented unless he explicitly expresses otherwise."); *Plant Genetic Sys.*, 789 F.2d at 1343 ("No evidence shows that the district court did not consider the documents that [Appellant] cites.").

Although Core asserts that Mr. Swanson "change[d] his tune" when he gave his sworn declaration, *see* Core Opening Br. 23-24, that assertion does not justify reversal of the preliminary injunction denial.  Although Mr. Swanson first represented to Core that "management" at Spectrum had instructed him to use the Core spreadsheet file, he later clarified that his statement was merely an assumption and that management was in fact ***not*** involved.  A1106 at ¶ 7.  Moreover, Core's own characterization of Mr. Swanson as a "whistleblower" supports that explanation.  As Mr. Swanson repeatedly stated to Mr. Hampton during their secretly recorded conversation, Mr. Swanson wanted to do the right thing according to the law.  *See* A1044 (Mr. Swanson stating that he wanted to do "the right thing"); *id.* (Mr. Swanson stating he did not want to do something he felt

was not "legal"); A1046 (Mr. Swanson stating that he contacted Core out of a sense of "civil duty").

But even if the secretly recorded conversation with Mr. Swanson could be viewed as inconsistent with the testimony provided via his sworn declaration, the district court was in the best position to resolve any such inconsistency. *See Heim v. State of Utah*, 8 F.3d 1541, 1545 (10th Cir. 1993) ("When a witness's testimony is inconsistent, we defer to the trial court's determination of facts."). Core has not shown that the district court clearly erred in weighing the evidence from the secretly recorded telephone conversation against Mr. Swanson's sworn statements. In light of those statements, and generally in light of Mr. Swanson's actions in reaching out to Core to discuss the spreadsheet file he found, the district court could have reasonably believed Mr. Swanson's sworn statements that he had not observed any use of Core trade secrets by Spectrum and that he personally performed searches of Spectrum computers to ensure that Spectrum was not using any information derived from Core. *Reebok Int'l Ltd.*, 32 F.3d at 1558 ("we may affirm implied findings that are supported by adequate evidence").

Nor is Core entitled to a preliminary injunction against a non-existent problem merely because Spectrum showed that it was not using the file. As the moving party, Core bears the burden to show that preliminary injunctive relief is necessary and warranted, which requires Core to show that Spectrum is using or

will use Core's trade secrets.  *See supra* at 28-29.  As in *Roper*, it is not enough for Core to simply allege that Spectrum had access to its intellectual property, and Spectrum need not voluntarily submit to an injunction in order to prove that it is **not** using Core's purported trade secrets.  Core reasons that if Spectrum is not using the "Software Application," an injunction will "merely maintain the status quo and will not damage Appellees."  Core Opening Br. 28-29.  However, as was held in *Roper*, where there is no evidence that the plaintiff's intellectual property has been or will be used "the status quo is maintained without injunctive relief pendente lite."  757 F.2d at 1273.

Accordingly, the district court's finding that Core had failed to show irreparable harm was supported by the evidence that Spectrum was not using the "Software Application" that was the basis for Core's motion.  The district court therefore did not abuse its discretion in denying the extraordinary remedy of a preliminary injunction.

### 3.    Core's Delay In Moving For A Preliminary Injunction On Its Trade Secret Claim Supports The District Court's Finding Of No Irreparable Harm.

As this Court has noted in the patent context, "delay in bringing an infringement action and seeking a preliminary injunction are factors that could suggest that the patentee is not irreparably harmed by the infringement."  *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 678 F.3d 1314, 1325 (Fed. Cir. 2012) (citing

*Nutrition 21 v. United States*, 930 F.2d 867, 872 (Fed. Cir. 1991)); *see also Kansas Health Care Assoc., Inc. v. Kansas Dept. of Social and Rehab. Servs.*, 31 F.3d 1536, 1543-44 (10th Cir. 1994) ("'As a general proposition, delay in seeking preliminary relief cuts against finding irreparable injury.'") (citation omitted); *Gonannies, Inc. v. Goupair.Com, Inc.*, 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006) ("Absent a good explanation, a substantial period of delay militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief.") (citation and internal quotation marks omitted). Given the evidence that Core intentionally delayed seeking an injunction on its trade secret claim, the district court's finding of no irreparable harm was not clearly erroneous.

Core's trade secret claim was pending for almost two years before Core moved for a preliminary injunction on that claim. *See* A44-59; A1015-19. In its Original Complaint and in each subsequent amended complaint, Core alleged that Spectrum was misappropriating Core's trade secrets and causing Core irreparable harm. *See* A52 at ¶ 31; A165-66 at ¶ 41. And in each complaint, Core asserted that a preliminary injunction was warranted. *See* A57 at ¶ 65; A172-73 at ¶ 88. Core did not amend its claims of trade secret misappropriation in light of the new evidence that was the basis of Core's Emergency Motion, likely because it understood that the new evidence was the basis neither for a new claim nor new

damages. Thus, the district court correctly noted that Core's belated second motion for a preliminary injunction was not based on any new claim, but was instead based on a new "method" by which Spectrum was allegedly misappropriating Core's trade secrets. A12.

Core asserts that there was no such delay because its second preliminary injunction motion was premised on the new evidence regarding the spreadsheet file that Core learned of shortly before filing its Emergency Motion. However, consistent with its obligations under Fed. R. Civ. P. 11, Core could not have filed its complaint in 2011 unless it had a reasonable belief that there was evidence that defendants had misappropriated its trade secrets. *See* Fed. R. Civ. P. 11(b)(3). Yet Core did not seek a preliminary injunction on its trade secret claim for nearly two years, even *after* it sought (and was denied) an injunction on its patent infringement claims. *See* Core Opening Br. 14 ("Core did not seek a preliminary injunction related to any of the claims that had been included in its Original Complaint, including the claims of trade secret misappropriation."). This delay is clear evidence that even though Core believed, as far back as 2011, that defendants had misappropriated its trade secrets (which defendants dispute), it understood it had suffered no irreparable harm. Its "new" evidence changes nothing. At best from Core's perspective, the evidence shows that a spreadsheet file Core now claims is a trade secret found its way to a Spectrum employee's computers. But

Core had alleged a trade secret claim in 2011, and if it truly believed that it was suffering irreparable harm, it would not have waited nearly two years before seeking preliminary relief. The reality is that Core suffered no such harm either when it first raised its claim or now.

To support its claim that Spectrum improperly used Core's trade secret, Core points to Spectrum's use of certain forms whose layout is similar to the layout of forms that Core says are produced using the Software Application. Core Opening Br. 20-22. But even crediting that allegation, nothing about that evidence demonstrates that Core suffered any harm, and it further confirms Core's delay. Far from constituting new evidence that could justify Core's delay in seeking a preliminary injunction, the forms were produced to Core by Spectrum in its document productions on May 18, 2012. *See* A1022 (citing "STS 001848" as the source of the reproduced Spectrum Service Report); A1023-24 (citing "STS 001849" as the source of the reproduced Job Site Survey Form). Nor do the forms show that Spectrum used any of Core's trade secrets. Core does not contend that the forms contain any trade secret information, nor could it. Rather than containing any of Core's confidential data, the forms merely contain blanks where data is to be filled in.

Accordingly, the "new" information regarding the spreadsheet file did not justify Core's delay in moving for a preliminary injunction on its trade secret

claim, and Core's delay is an independent reason for concluding that the district court's denial of a preliminary injunction was not an abuse of discretion. *See Apple, Inc.*, 678 F.3d at 1325; *Kansas Health Care Assoc.*, 31 F.3d at 1543-44.

### C.    Core Failed To Demonstrate A Likelihood Of Success On The Merits Of Its Trade Secret Claim.

As Core acknowledges, it cannot obtain a preliminary injunction without showing that it is likely to succeed on the merits of its trade secret misappropriation claim.  Core Opening Br. 37-38.   Core failed to do so, and the district court's denial can be affirmed on that alternative basis as well. *See Samish Indian Nation v. United States*, 419 F.3d 1355, 1364 (Fed. Cir. 2005) ("The court can affirm the trial court on any basis in the record.") (citation omitted); *see also* A1094 (Spectrum arguing that Core failed to show likelihood of success by failing to demonstrate use of the allegedly misappropriated spreadsheet file).  The evidence that Spectrum did not use the spreadsheet file not only supports the finding of no irreparable harm, but also belies Core's assertion that it is likely to succeed on the merits.

Core's own cited authority makes clear that it cannot succeed on a claim of trade secret misappropriation unless it proves, *inter alia*, that "'Defendants **used** the trade secret without authorization.'" *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 449 (5th Cir. 2007) (emphasis added; citations omitted); *see also CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 273 (5th Cir. 2009) (plaintiff must

show "the defendant *used* the trade secret"); *Pre-Paid Legal Services, Inc.*, No. 12-cv-346-JHP, 2013 WL 551335, at *6 (under Oklahoma law, plaintiff must show "use of the secrets by the Defendant to the Plaintiff's detriment"); *see also* Core Opening Br. 38 (Core acknowledging that it "must show" that "Appellees used the Software Application").[2]   Under the law that Core asserts governs its trade secret claim, it is not sufficient for a plaintiff to merely assert that a defendant has access to an alleged trade secret—the plaintiff must prove that the defendant *actually used* it in a commercial manner.  "'A cause of action for misappropriation of trade secrets accrues when the trade secret is *actually* used.'"  *Gen. Universal Sys.*, 500 F.3d at 450 (quoting *Computer Assocs. Int'l v. Altai Inc.*, 918 S.W.2d 453, 455 (Tex. 1996)).  Furthermore, "'[u]se' of a trade secret means commercial use, by which a person seeks to profit from the use of the secret.'"  *Id*. (quoting *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 464 (Tex. App. 2004) and citing *Atlantic Richfield Co. v. Misty Prods., Inc.*, 820 S.W.2d 414, 421 (Tex. App. 1991)); *see also* Restatement Third of Unfair Competition § 40.

Accordingly, Core could not succeed on its claim of trade secret misappropriation simply by providing evidence that a spreadsheet file it now

---

[2]    Although Appellees dispute that Texas law applies to this claim, *see* A135-46, the cited cases demonstrate that Core showed no likelihood of success even under its own theory of the case.

claims contains trade secrets ended up on a Spectrum employee's computers without also proving that Spectrum made commercial use of that trade secret.  For all the reasons set forth above, Core failed to make that latter showing.  *See supra* at 29-34.  And because Core is not entitled to a preliminary injunction unless it proves a likelihood of success on each and every required element of a claim, its failure to prove commercial use of its purported trade secret is a sufficient reason to affirm the denial of the preliminary injunction on both the irreparable harm and likelihood of success prongs.  *See MedSpring Group, Inc. v. Feng*, 368 F. Supp. 2d 1270, 1279 (D. Utah 2005) (denying preliminary injunction because the plaintiff "failed to establish that [the defendant] has used any of these alleged trade secrets" and thus "has not established that it has a substantial likelihood of prevailing on its claim that Defendants have violated the Trade Secrets Act").

### D.    The Remaining Preliminary Injunction Factors Do Not Evidence An Abuse of Discretion.

Core argues that "undisputed evidence" demonstrates that the remaining preliminary injunction factors—the balance of equities and public interest—weigh in favor of granting a preliminary injunction.  *See* Core Opening Br. 28-29.  There is no need to consider more factors where, as here, there has been no showing of irreparable harm or success on the merits.  *See Altana Pharma AG*, 566 F.3d  at 1005.  But, in any event, Spectrum refuted Core's claims as to each of those factors in its opposition to Core's Emergency Motion.  Regarding the balance of equities,

Spectrum submitted evidence that it was not using Core's alleged trade secret, and thus argued that there was no injury to Core to be weighed in assessing the balance of equities. *See* A1097. As to the public interest, the public has no interest in enjoining the use of a trade secret when the evidence reveals that the trade secret was not used. *See id.* Because the district court could have reasonably credited Spectrum's evidence of lack of use, Core is incorrect that its evidence regarding the balance of equities and public interest was "undisputed." Nor is there a public interest in benefiting a party, like Core, that unduly delayed before seeking an injunction.

## III. THE DISTRICT COURT ACTED WITHIN ITS DISCRETION IN DENYING CORE'S MOTIONS TO LIFT THE STAY PENDING REEXAMINATION AND TO SEVER THE NON-PATENT CLAIMS.

As explained above, this Court lacks jurisdiction to consider the district court's denial of Core's request in its Emergency Motion to lift the stay pending reexamination and to sever the patent claims from the non-patent claims because those issues are neither inextricably intertwined with nor necessary for the disposition of Core's appeal from the denial of the preliminary injunction. *See supra* at 16-19. However, in the event the Court reaches these issues, the district court did not abuse its discretion in denying Core's motions.

### A.    The District Court Did Not Abuse Its Discretion In Declining To Lift The Stay Pending Reexamination As To The Non-Patent Claims.

As a general rule, the power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). Thus, the decision whether to grant a stay is within the discretion of the district court, and is reversed only for an abuse of that discretion. *See, e.g.*, *Gould*, 705 F.2d at 1341; *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 602-03 (Fed. Cir. 1985) (district court has discretion to grant a stay pending reexamination); *Pet Milk Co. v. Ritter*, 323 F.2d 586, 588 (10th Cir. 1963) ("granting of the stay ordinarily lies within the discretion of the district court").

In determining whether a stay is appropriate, the district court considers factors such as "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay of litigation will simplify the issues in question and facilitate the trial; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage for the non-moving party." *Titan Holdings, LLC v. Under Armour, Inc.*, No. CIV-11-777-D, 2012 WL 2885768, at *2 (W.D. Okla. July 13, 2012); *see also Automated Merch. Sys., Inc. v. Crane Co.*, 357 Fed. Appx. 297, 303 (Fed. Cir. 2009) (affirming a stay pending reexamination based in part on the district court's finding that the stay "may simplify the issues for trial") (A1122-

28); A940 (Core reciting the *Titan Holdings* factors).  The district court did not abuse its discretion in declining to lift its previously-issued stay pending reexamination to allow the non-patent claims to proceed while the patent claims are stayed.[3]

To begin with, Core does not—and cannot—challenge the district court's initial decision to stay the patent infringement claims pending reexamination. Although Appellees believe the Court lacks jurisdiction to review any aspect of the district court's stay ruling, Core has no conceivable argument that there is jurisdiction to review the district court's order staying the patent claims.  In its Emergency Motion, Core did not challenge that earlier decision and it cannot and does not challenge it for the first time in this appeal.  Accordingly, given that the district court's decision to stay the patent infringement claims is law of the case that is unreviewable by this Court, the only question in this appeal (assuming for the sake of argument that the Court has jurisdiction to consider it) is whether the district court abused its discretion by declining to lift the stay as to the non-patent claims so that those claims would proceed while the patent claims are stayed.

---

[3]    At a minimum, none of Core's arguments explains why the district court should have lifted the stay for (or severed) Core's non-patent claims not involving the alleged misappropriation of trade secrets that was the basis for its injunction motion.

It did not.  This Court has previously upheld a stay pending reexamination of an entire case, including state law claims that were intertwined with patent claims. *See Automated Merchandising Sys.*, 357 Fed. Appx. at 303 ("We also do not think that the district court erred in staying the state-law claims, which are intertwined with the patent claims."); *see also Biogaia AB v. Nature's Way Products, Inc.*, No. 5:10-cv-449-FL, 2011 WL 3664350, at *3 (E.D.N.C. Aug. 18, 2011) (citations omitted) (granting motion to stay both patent and non-patent claims because the claims were "inextricably related").  Nor would it have made any sense for the district court here to have issued a piecemeal stay only as to part of the case.  *See Richtek Tech. Corp. v. UPI Semiconductor Corp.*, No. C 09-05659 WHA, 2011 WL 445509, at *6 (N.D. Cal. Feb. 3, 2011) ("[Plaintiff's] copyright claim arises from the same basic factual theory as its patent claims for relief, so discovery for the copyright and patent portions of the action will be inextricably intertwined. Accordingly, a partial stay of the action that applied only to the patent claims for relief and allowed piecemeal discovery and litigation to move forward on the copyright claim simply would create a mess.")

In declining to grant Core's motion, the district court properly relied on its earlier conclusions that "Core had failed to establish how in fact it would be unduly prejudiced by the granting of the stay" and that the stay "would simplify the issues in this case and facilitate any trial that subsequently occurred."  A10.  To

the extent Core's claims have any merit at all, that would have to be proven at trial. Yet it would contravene principles of judicial economy to have sequential trials, one on the non-patent claims and one on the related patent claim.[4]  Nor would Core be prejudiced since it, like every other party in a case involving such a stay, retains the full ability to litigate all of its claims once the stay has expired.

Core nevertheless argues that the district court was required to lift the stay as to the trade secret claims because if this Court reverses the denial of the preliminary injunction "this Court's mandate will return to a 'black hole' where it will languish indefinitely while the reexamination proceedings drag out" and because "Core deserves the opportunity to investigate the extent to which Appellees are using its trade secrets, without having to wait months or years while the unrelated reexamination proceedings run their course."  Core Opening Br. 52-53.  Neither of those contentions demonstrates that the district court abused its discretion in declining to grant Core's preferred relief.

First, in the entirely hypothetical event that the Court were to reverse the denial of the preliminary injunction, there would be no "black hole."  Rather, there would be a preliminary injunction that would be in place (unless later modified) for

---

[4]     Indeed, such sequential trials on related issues might violate Appellees' rights under the Seventh Amendment to have a single jury consider all related questions of fact.  *See Gasoline Prods. Co., Inc. v. Champlin Refining Co.*, 283 U.S. 494, 497-500 (1931).

the remainder of the litigation.  Second, Core will have the right to litigate all of its trade secret claims after the stay has expired, including at trial if one is warranted. It also had the right, as the district court recognized, to seek a preliminary injunction notwithstanding the stay.  But an injunction was properly denied (twice), and Core has no right to use the coercive discovery processes of the federal courts to "investigate" its claim.  Core Opening Br. 53.  That puts the cart before the horse.  Core was required to "investigate" all of the elements of its trade secret claim—including whether the defendants used trade secrets in a commercial manner—*before* filing suit, not after.  *See qad. Inc. v. ALN Assocs., Inc.*, No. 88 C 2246, 1990 WL 93362 (N.D. Ill. June 20, 1990) ("Before [plaintiff] originally filed suit, both it and its counsel were obligated by Rule 11 to have conducted a reasonable inquiry and to determine that its trade secrets claim was well grounded in fact.") (internal quotation marks omitted).  Having failed to put forward any evidence of such use—or any harm—in either of its injunction motions, Core has no right to use discovery to engage in a fishing expedition for yet another futile motion.  Rather, like every other patentee in a case stayed pending reexamination, Core will be able to litigate its claims in an orderly fashion once the stay is lifted.[5]

---

[5]    Moreover, and in any event, the record shows that Appellees have preserved pending the duration of this litigation all documents related to the "Software Application" or Core, which were identified based on searches of all Spectrum computers.  *See* A1106 at ¶¶ 10-13.

### B.    The District Court Did Not Abuse Its Discretion In Declining To Sever The Non-Patent Claims.

Core also argues that the district court should have severed the trade secret claims pursuant to Fed. R. Civ. P. 21.  Assuming for the sake of argument that the Court has jurisdiction to review this issue, the district court did not abuse its discretion in declining severance for many of the same reasons it properly denied Core's motion to lift the stay.

To begin with, the district court properly noted that "Core's reliance on Rule 21 in support of [its] motion is misplaced."  A10.  When Rule 21 is employed to sever claims, those claims become entirely separate cases proceeding separately along their own tracks to separate judgments.  *See*, *e.g.*, *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1519 n.8 (10th Cir. 1991); *United States v. O'Neil*, 709 F.2d 361, 368 (5th Cir. 1983) ("[s]everance under Rule 21 creates two separate actions . . . where previously there was but one" where each new action "proceeds as a discrete, independent action").  The essence of Core's argument, however, is that the district court should have lifted the stay pending reexamination to allow the trade secret claim to proceed in this case.  As the district court correctly held, "Rule 21 does not provide for such relief."  A10-11.  And to the extent Core really sought to sever its non-patent claims into separate cases, once the district court declined to exempt the trade secret claims from the stay, that stay of litigation precluded Core from seeking severance in order to pursue the stayed

47

claims.  A1013 (ordering that "[t]his action is stayed until the PTO reexamination proceeding is completed" subject only to "the rights of the parties to seek to reopen it during the period of administrative closure for any meritorious purpose").

But to the extent Rule 21 is even applicable, the district court did not abuse its discretion in declining severance.  In deciding whether to sever claims, the district court considers various factors, including the promotion of judicial economy and potential prejudice to the parties.  *See* Core Opening Br. 48.  A district court's decision whether to sever or bifurcate claims is affirmed absent a clear abuse of discretion.  *See Sarracino*, 340 F.3d at 1165; *Anaeme*, 164 F.3d at 1285; *see also In re Google Inc.*, 412 Fed. Appx. at 296.

Because the district court considered the severance issues to be duplicative of Core's motion to lift the stay, it denied that request based on the same findings that Core had shown no prejudice and that maintaining the stay as to all claims would simplify the issues and facilitate any trial that might occur.  A10 (court noted that it had "previously addressed Core's request to sever certain claims" in the context of the court's Order staying the case).  Those findings were well within the court's discretion for the reasons noted above.  *See supra* at 43-46.

But in addition, severing Core's non-patent claims would frustrate rather than promote judicial economy.  Core *itself* chose to amend its Original Complaint to add the patent claims, rather than filing those claims as a separate, stand-alone

48

case.  *See* A152-176.  It now seeks to undo its own decision by severing out claims that it intentionally decided to bring together, in order to escape the effect of the stay pending reexamination that the district court properly entered and that Core cannot challenge on appeal.  The district court did not abuse its discretion in holding Core to its own decision.  Core amended its complaint rather than filing a new action because all of its claims arise out of a common nucleus of operative fact—whether defendants were improperly using Core's proprietary technology to compete with Core.  It would make no sense to have those related claims involving the same parties litigated in two separate cases proceeding along separate tracks. *See Jolley v. Welch*, 904 F.2d 988, 994 (5th Cir. 1990) (no abuse of discretion in declining to sever claims that involved the same alleged actions of the same party); *Tab Exp. Int'l, Inc. v. Aviation Simulation Tech., Inc.*, 215 F.R.D. 621, 623 (D. Kan. 2003) ("Rule 21 applies when the claims asserted do not arise out of the same transaction or occurrence or do not present some common question of law or fact.") (citation omitted).

## CONCLUSION

For the foregoing reasons, the Court should affirm the judgment denying Core's motion for a preliminary injunction and should decline to consider, or alternatively affirm, the denial of Core's motions to lift the stay as to the non-patent claims or sever those claims.

Respectfully submitted,

/s Jonathan S. Franklin

J. Christopher Davis             Jonathan S. Franklin
Paul Kingsolver                  FULBRIGHT & JAWORSKI L.L.P.
Jonathan Cartledge               801 Pennsylvania Ave., N.W.
JOHNSON & JONES, P.C.            Washington, D.C.  20004
2200 Bank of America Center      (202) 662-0466
15 West Sixth Street
Tulsa, Oklahoma 74119-5416       Sheila Kadura
Telephone: (918) 584-6644        FULBRIGHT & JAWORSKI L.L.P.
Fax: (888) 789-0940              98 San Jacinto Boulevard, Suite 1100
                                 Austin, TX  78701-4255
                                 (512) 474-5201

April 18, 2013                   Counsel for Appellees

## CERTIFICATE OF SERVICE

I certify that on April 18, 2013, this Brief for Appellees was served by email

via the Court's CM/ECF system upon the following counsel:

> Michael O. Sutton
> Tanya L. Chaney
> SUTTON MCAUGHAN DEAVER PLLC
> Three Riverway, Suite 900
> Houston, TX 77056
> (713) 800-5700
>
> *Counsel for Appellant*

/s Jonathan S. Franklin
Jonathan S. Franklin
FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Ave., N.W.
Washington, D.C.  20004
(202) 662-0466

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I certify that

this Brief for Appellees is proportionately spaced and contains 12,039 words

excluding parts of the document exempted by Rule 32(a)(7)(B)(iii).

/s Jonathan S. Franklin
Jonathan S. Franklin
FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Ave., N.W.
Washington, D.C.  20004
(202) 662-0466

April 18, 2013